UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREG UMAMOTO and SHIRLEY UMAMOTO,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>INSPHERE INSURANCE SOLUTIONS, INC.; HEALTHMARKETS INC.; THE BLACKSTONE GROUP L.P.; GOLDMAN SACHS CAPITAL ¶TNERS; DLJ MERCHANT BANKING ¶TNERS; KATHERINE FEENY; KENNETH FASOLA;KENT SCHOOLER;and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No.: 13-CV-0475-LHK<br><br>ORDER REMANDING CASE |

Before the Court is the Motion to Remand of Plaintiffs Greg Umamoto ("Greg") and Shirley Umamoto ("Shirley")[1] (collectively, "Plaintiffs"). ECF No. 17 ("Mot." or "Motion"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without a hearing. Accordingly, the May 16, 2013 hearing on the Motion to Remand is VACATED. Having considered the submissions of the parties and the relevant law, the Court GRANTS Plaintiffs' Motion to Remand.

---

[1] In referring to Plaintiffs by their first names, the Court does not intend to be disrespectful. Rather, Plaintiffs' pleadings refer to Plaintiffs by their first names, and, in resolving this motion, it will be necessary to refer to the Plaintiffs individually. Thus, in order to be consistent with the pleadings, the Court refers to Plaintiffs by their first names.

1

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

## I.      FACTUAL BACKGROUND

Plaintiffs were previously employed by Defendant Insphere Insurance Solutions, Inc. ("Insphere").  ECF No. 1, Ex. A (First Amended Complaint) ¶¶14-15.  Insphere is in the business of selling insurance policies.  *Id.* ¶ 17.           Greg held the title of Division/Agency Manager, and Shirley held the title of Sales Leader.  *Id.* ¶¶ 14-15, 18.  Defendant Katherine Feeny ("Feeny") was the Zone Manager for the states of California, Arizona, and Nevada.  *Id.* ¶ 8.  Defendant Kenneth Fasola ("Fasola") was the President and CEO of Insphere.  *Id.* ¶ 9.  Defendant Kent Schooler ("Schooler") held an unspecified executive position with Insphere.  *Id.* ¶ 10.

Plaintiffs allege that Defendants represented to Greg and other Division/Agency Managers that Greg and other Division/Agency Managers owned their own divisions and were, in essence, small business owners.  *Id.* ¶¶ 21-24.  Plaintiffs contend that, in light of their belief that Greg owned his division, Plaintiffs spent their own money on business expenses.  *Id.* ¶ 24.

On or about October 16, 2009, Greg "had communications with [Insphere] in which Insphere[2] implied that Greg never actually 'owned' his own office" and that Insphere "owned the business."  *Id.* ¶ 27.  Plaintiffs allege that, in December 2009, Insphere paid Greg $7,000 for his office furniture, but did not "offer[] to repay or reimburse Greg for the millions of dollars of business expenses he advanced on behalf of Insphere or" pay Greg for the "value of the business Insphere wrongfully claimed they owned."  *Id.* ¶ 29.  Following Insphere's "taking of Greg's business and reclassification [of Greg] from independent contractor to employee," Plaintiffs "decided that [Greg] needed to take action…."  *Id.* ¶ 30.

On or about September 12, 2011, Greg, with the support of his wife Shirley, filed a complaint with the Labor Commissioner reporting violations of the Labor Code by Insphere.  *Id.* ¶ 31.  Greg alleged that Insphere was not paying its employees properly and sought reimbursement for unpaid overtime wages, meal and rest breaks, vacation hours, and paid expenses.  *Id.*

In December 2011, Plaintiffs attended the Insphere Annual Awards Meeting.  On the last day of the meeting, on or about December 17, 2011, Fasola and Schooler met with Greg and "informed [Greg] that he was being put on 'administrative leave due to actions against the

---

[2] In the FAC, party names are written in all capital letters.  When quoting from the FAC, the Court only capitalizes the first letter of each party name.

2

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

1   company.'" *Id.* ¶ 33.  Approximately 30 minutes after Greg's meeting with Fasola and Schooler,

2   Feeny had a meeting with Greg's sales team, which consisted of approximately sixteen sales

3   members, including Shirley.  *Id.* ¶ 34.  At this meeting, Feeny informed the group that Greg was

4   put on "administrative leave due to actions against the company."  *Id.*  After Feeny's meeting with

5   Greg's sales team ended, Feeny had a meeting with nine Agency Managers, during which Feeny

6   stated that Greg was put on "administrative leave due to actions against the company."  *Id.*

7        On or about January 25, 2012, Greg filed a complaint with the Department of Fair

8   Employment and Housing "regarding gender discrimination based on [Feeny's] inappropriate and

9   discriminatory remarks regarding men…."  *Id.* ¶ 38.  The complaint sets forth one example of such

10  a remark.  Specifically, Plaintiffs allege that "on or about November 10, 2011," Feeny stated "men

11  lie, men cheat, men cannot be trusted."  *Id.* ¶ 32.

12       On February 3, 2012, Feeny sent Greg an email informing Greg of Insphere's decision to

13  terminate him.  *Id.* ¶ 40.  The letter stated that Greg was being terminated "due to performance."

14  *Id.*  However, Plaintiffs allege that Greg's office had been recognized as one of the most successful

15  in the country, and that Greg had received a number of awards from Insphere.  *Id.* ¶ 42.

16       On or about April 3, 2012, Shirley was terminated by Insphere.  *Id.* ¶ 41.  Plaintiffs allege

17  that "Insphere stated they were terminating Shirley 'due to performance.'"  *Id.*  However, Shirley

18  had been ranked as "one of the top Sales Leaders nationally throughout the company, and earn[ed]

19  the award for #1 Sales Leader in 2010…"  *Id.*  Plaintiffs allege that, in total, Shirley also earned

20  129 awards and accolades during her time at Insphere, and that Shirley had been appointed to the

21  Insphere 2012 Agent Advisory Board.  *Id.* ¶¶ 43-44.

22  **II.   PROCEDURAL BACKGROUND**

23       On October 17, 2012, Plaintiffs filed a complaint in the Superior Court for the County of

24  Santa Clara.  *See* ECF No. 1 at 2.[3]  Plaintiffs filed their First Amended Complaint ("FAC") on

---

[3] Greg, along with two other Insphere employees, Kent Borgman and Deborah O'Connell, had previously filed an action against Insphere, Feeny, and several other defendants alleging claims which are similar to some of the claims in the instant case.  *See Borgman v. Insphere Insurance Solutions, Inc.*, Case No. 11-CV-05638-CRB ("*Umamoto I*"), ECF No. 1, Ex. A.  In January 2012, Judge Breyer dismissed *Umamoto I* pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute after the *Umamoto I* Plaintiffs failed to respond to a motion to dismiss filed by several of the *Umamoto I* Defendants.  ECF Nos. 20-21.  This dismissal appears to have been a dismissal with

3

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

1   November 29, 2012.  In the FAC, Plaintiffs allege claims for violations of various labor codes,

2   wrongful termination, defamation, discrimination, breach of the implied covenant of good faith and

3   fair dealing, fraud, negligent misrepresentation, false promise, and violation of California Labor

4   Code § 17200.  Defendants removed the action to the instant Court on February 4, 2013.  ECF No.

5   1.

6   Plaintiffs filed their Motion to Remand on February 26, 2013.  ECF No. 17.  On March 12,

7   2013, Defendants filed their Opposition to the Motion to Remand.  ECF No. 23 ("Opp'n" or

8   "Opposition").  On March 13, 2013, Plaintiffs filed their Reply in Support of the Motion to

9   Remand.  ECF No. 25 ("Reply").

## III.   LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would have had original subject matter jurisdiction over the claims.  28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court.  28 U.S.C. § 1447(c).  "The removal statute is strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).  Consequently, "[t]he defendant bears the burden of establishing that removal is proper," *id.*, and "any doubt about the right of removal requires resolution in favor of remand," *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

## IV.   DISCUSSION

In removing this case, Defendants stated that the basis for the Court's jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a).  *See* Notice of Removal ¶ 14.  Defendants acknowledged that one Defendant, Feeny, like Plaintiffs, is a resident of California.  *See id.*

---

prejudice.  ECF No. 32 (stating that "previous dismissal of Plaintiffs' case" was "with prejudice"); Fed. R. Civ. Proc. 41(b) (stating that, unless otherwise noted, a dismissal under Rule 41(b) is "an adjudication on the merits").  In their Opposition to the Motion to Remand, Defendants argue that, in light of this dismissal, Greg's claims against Feeny are barred under the doctrine of *res judicata*. *See* ECF No. 23.  Because the Court remands on the grounds that Shirley may have a claim against Feeny, the Court need not resolve whether *res judicata* applies to Greg's claim against Feeny.

4

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

1   However, Defendants argue that Feeny is a "sham" Defendant and was improperly joined for the
2   purpose of defeating diversity jurisdiction. *Id.* Accordingly, Defendants argue that Feeny's
3   citizenship should be ignored in determining whether diversity jurisdiction exists. *Id.*

4     Plaintiffs allege one claim against Feeny. Specifically, Plaintiffs allege, in Plaintiffs' third
5   cause of action, that Feeny is liable for defamation for certain statements regarding Greg and
6   Shirley. *See* FAC ¶¶ 65-72. Specifically, Plaintiffs allege that Feeny defamed Greg by making
7   comments to other employees that "Greg has been put on administrative leave due to actions
8   against the company" and that "Greg was put on administrative leave… because he just filed a suit
9   against the company for" $15 million. *Id.* ¶ 70. Furthermore, with respect to Shirley, Plaintiff
10  alleges that "Insphere stated they were terminating Shirley 'due to performance.'" *Id.* ¶ 41.
11  Plaintiff alleges that "based on compelled self-publication defamation,… Shirley has been
12  compelled to disclose the content of the defamatory statements given by Defendant for [Shirley's]
13  termination… during subsequent applications and interviews for new employment." *Id.* ¶ 69.

14    In Plaintiffs' Motion for Remand, Plaintiffs argue that Feeny is not a sham Defendant. *See*
15  Mot. at 3. Plaintiffs argue that Plaintiffs have stated a claim for defamation against Feeny based
16  on: (1) her statements that Greg was placed on a leave of absence due to his actions against the
17  company, and (2) the statement that Shirley was terminated due to performance. *See id.*; Reply at
18  7. For the reasons set forth below, the Court declines to find that Feeny is a sham Defendant, at
19  least with respect to Shirley. Accordingly, the Court GRANTS Plaintiffs' Motion to Remand.

20    **A. Standard for Determining Whether a Defendant is a Sham Defendant**

21    The Ninth Circuit has set forth standards regarding fraudulent joinder and removal. A
22  defendant may remove a civil action that alleges claims against a non-diverse defendant when the
23  plaintiff has no basis for suing that defendant. *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339
24  (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the
25  failure is obvious according to the settled rules of the state, the joinder of the resident defendant is
26  fraudulent." *Id.; Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998). In such a case,
27  the "fraudulently joined" defendant is disregarded for jurisdictional purposes. *Id.* Unlike in the
28

context of a motion to dismiss, in opposing a motion to remand, "[t]he defendant… is entitled to present… facts showing the joinder to be fraudulent." *Ritchey*, 139 F.3d at 1318.

Proving fraudulent joinder is not an easy task. It "must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). "[A]ll disputed questions of fact and all ambiguities in the controlling state law are [to be] resolved in plaintiff's favor." *Calero v. Unisys Corp.,* 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003). If after doing so, "there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Macey v. Allstate Prop. & Cas. Ins. Co.,* 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002); *see also Burris v. AT&T Wireless, Inc.*, C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (remanding where defendant failed to "demonstrate[] that, under California law, [plaintiff] would not be afforded leave to amend his complaint to cure this purported deficiency"). It is the defendant's burden to "show that 'there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant'." *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting *Burris,* 2006 WL 2038040 at *1).

In this case, Defendants argue that Plaintiffs' allegations fail to show that Feeny defamed Greg or Shirley, and that accordingly, it may be inferred that Plaintiffs' defamation claim against Feeny is fraudulent. *See* Opp'n at 12. As will be set forth below, Plaintiff may be able to state a claim against Feeny for defaming Shirley, and, consequently, the Court is not persuaded that Feeny is a sham defendant, at least as to Shirley.[4]

### B. Defendants Have Failed to Show that Feeny is a Sham Defendant with Respect to Shirley

With respect to Shirley, Plaintiff alleges that, "based on compelled self-publication defamation, Plaintiff Shirley has been compelled to disclose" that she was terminated "due to performance reasons" "during subsequent applications and interviews for new employment." FAC ¶¶ 41, 69. Defendants argue that Shirley's defamation claim against Feeny fails for two reasons: (1) Plaintiffs' FAC alleges that it was "Insphere" and not Feeny who told Shirley that she was

---

[4] In light of the Court's conclusions below, the Court need not resolve whether Feeny is a sham defendant with respect to Greg.

6

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

1  being terminated "due to performance," and (2) even if Feeny did make this statement, it would be

2  privileged. Opp'n at 12. While the Court agrees that Plaintiffs' allegations fail for the first reason,

3  the Court is not persuaded that this failure provides a sufficient basis to infer that Feeny is a sham

4  defendant as the deficiency may be amended to correct the deficiency. Moreover, as to the second

5  reason, the Court is not convinced that the Superior Court would find that Feeny's statement is

6  privileged. The Court addresses each issue in turn.

7  First, as to Defendants' argument that Plaintiffs' defamation claim against Feeny fails

8  because Insphere, and not Feeny, is alleged to have told Shirley she was being terminated for

9  performance reasons, Compl. ¶ 14, the Court agrees that Plaintiffs' claim is likely to fail on this

10  ground. As explained in *Alstad v. Office Depot*, "[s]elf-publication of an alleged defamatory

11  statement may be imputed *to the originator of the statement* if '[1] the person demeaned is

12  operating under a strong compulsion to republish the defamatory statement and [2] the

13  circumstances which create the strong compulsion are known to the originator of the defamatory

14  statement at the time he communicates it to the person defamed.'" *Id.*, C-94-1400 DLJ, 1995 WL

15  84452, at *7 (N.D. Cal. Feb. 7, 1995) (quoting *Davis v. Consol. Freightways*, 29 Cal. App. 4th 354,

16  373 (1994)) (emphasis added). Because Insphere is alleged to have been "the originator" of the

17  statement in this case, Compl. ¶ 41, Plaintiffs' defamation claim against Feeny, as currently

18  alleged, likely would be dismissed. *Alstad*, 1995 WL 84452 at *7.

19  Nevertheless, as set forth above, remand is appropriate if "there is a non-fanciful

20  possibility that plaintiff can state a claim." *Macey,* 220 F. Supp. 2d at 1117; *Burris*, 2006 WL

21  2038040 at *2 (holding that remand was appropriate where Defendant failed to show that plaintiff

22  would not be afforded leave to amend his complaint to cure… purported deficiency" with respect

23  to intentional infliction of emotional distress claim); *Padilla*, 697 F. Supp. 2d at 1159 (remanding

24  where defendants failed to "establish[] that [p]laintiff could not amend her pleadings and ultimately

25  recover… for harassment under the FEHA").

26  At this stage, the Court is not persuaded that Plaintiffs could not allege facts showing that

27  Feeny was the originator of, or was otherwise responsible for, the statement that Shirley was

28  terminated due to performance reasons. Feeny was Insphere's "Zone Manager" for California, the

7
Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE

state in which Shirley operated. FAC ¶ 8. It is possible that Feeny was involved in Shirley's termination and was responsible for the statement that Shirley was being terminated for performance reasons. Indeed, the Court notes that Feeny is alleged to have been directly involved in Greg's termination. *See id.* ¶ 40 (alleging that Feeny sent Greg "an email informing GREG of Insphere's decision to terminate" Greg). Defendants have offered no evidence from which it may be determined that Feeny was not responsible for the statement that Shirley was being terminated due to performance despite having the opportunity to do so in Defendants' Opposition to Plaintiffs' Motion to Remand. Under these circumstances, this Court would likely grant Plaintiffs leave to amend as to this claim. The Superior Court would also likely grant Plaintiff leave to amend. *See e.g. Harris v. City of Santa Monica*, 56 Cal. 4th 203, 240 (2013) (recognizing the "principle… that leave to amend a pleading should be liberally granted"). Consequently, this Court is not persuaded that Plaintiffs' failure to specifically allege that Feeny was the originator of the statement that Shirley was being terminated due to performance provides a sufficient basis to find that Feeny is a sham defendant.

Defendant argues that Plaintiffs' claim fails for the additional reason that any statement Feeny may have made was privileged. Opp'n at 12. The Court is not persuaded. California Civil Code § 47(c) establishes a privilege for "communication[s]… to a person interested… (1) by one who is also interested…" Cal. Civ. Code § 47. "Parties in a business or contractual relationship have the requisite 'common interest' for the privilege to apply." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007). The privilege may be defeated by evidence that the challenged statement was made with malice. Cal. Civ. Code § 47(c). "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights…." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003) (internal citations, quotation marks, and alterations omitted). "[M]alice [may] not [be] inferred from the communication" itself. Cal. Civ. Code § 48.

In this case, Plaintiffs have alleged that Shirley was terminated due to performance even though Shirley was "consistently ranked #1 nationally throughout the company in sales" and had "earned approximately 129 awards in accolades." FAC ¶ 43. Furthermore, Plaintiffs allege that Shirley was terminated on April 3, 2012, just two months after her husband Greg filed a sexual harassment complaint against Feeny and Feeny sent Greg an email terminating him. *See id.* ¶¶ 38-41. Given that Shirley was a highly ranked member of the national sales team and that Shirley was terminated in close proximity to Greg's sexual harassment complaint and termination, it is possible that the Superior Court would find that Plaintiffs' allegations are sufficient to show malice. *See Calero*, 271 F. Supp. 2d at 1178 (finding that remand was appropriate where "a state court possibly could find that plaintiff has established a cause of action for intentional infliction of emotional distress"). Moreover, even if Plaintiffs' allegations fail to show malice, this Court is not persuaded that the deficiencies are so obvious that it may be inferred that Plaintiffs' defamation claim against Feeny is fraudulent. *See McCabe,* 811 F.2d at 1339 (holding that a defendant is fraudulently joined if the "plaintiff fails to state a cause of action against [the]… defendant, and the failure is obvious according to the settled rules of the state").

As set forth above, there is a non-fanciful possibility that Plaintiffs may be able to cure their failure to allege that Feeny was the originator of the allegedly defamatory statement in an amended complaint. Moreover, this Court is not necessarily persuaded that Plaintiffs have failed to allege facts showing malice. Consequently, this Court is not convinced that Feeny is a sham defendant. Under these circumstances, remand is appropriate. *See Moore-Thomas*, 553 F.3d at 1244 (holding that "any doubt about the right of removal requires resolution in favor of remand"); *Provincial Gov't of Marinduque*, 582 F.3d at 1087 (holding that "[t]he removal statute [should be] strictly construed against removal jurisdiction"); *Padilla*, 697 F. Supp. 2d at 1159 (remanding where defendants failed to "establish[] that [p]laintiff could not amend her pleadings and ultimately recover… for harassment under the FEHA").

Notably, in Defendant's Opposition, Defendants argue that "it does not matter what Plaintiffs… might be able to… plead in the future" because "whether removal [is] proper is determined based on the allegations at the time of removal." Opp'n at 8 (citing *Kruso v. Int'l Tel.*

9

*& Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989)). Defendants appear to rely chiefly on the Ninth Circuit's decision in *Kruso*. In that case, the *Kruso* Court noted, in Footnote 12, that it would not consider "allegations made in [the] plaintiffs' unfiled Proposed First Amended Complaint" in determining whether two non-diverse defendants were fraudulently joined. *Id.*, 872 F.2d at 1426 n.12. To the extent Defendants are arguing that remand should be denied here even though Plaintiffs may be able to amend their defamation claim, the Court is not persuaded.

Footnote 12 might arguably be construed as supporting the proposition that the possibility that Plaintiffs might be able to cure the deficiencies in the defamation claim is irrelevant. Nevertheless, the Court observes that the *Kruso* Court, in determining that the non-diverse defendants in that case had been fraudulently joined, emphasized the fact that the plaintiffs had not only failed to state a claim against the defendants, but also *could not* have stated a claim under the circumstances of that case. *See e.g. id.*, 872 F.2d at 1427 ("Defendants are correct that plaintiffs cannot prevail on any claims they seek to bring against the defendants, including Bookwalter and Green, because plaintiffs were not parties to the alleged agreements."); *id.* (holding that plaintiffs "cannot allege injury to themselves by reason of alleged wrongdoing") (emphasis omitted). Thus, notwithstanding Footnote 12, the Court is not persuaded that *Kruso* prohibits remand here, where there is a "non-fanciful possibility that plaintiff can state a claim." *Macey,* 220 F. Supp. 2d at 1117.[5] This approach is the most consistent with the principles that "any doubt about the right of removal requires resolution in favor of remand," *Moore-Thomas*, 553 F.3d at 1244, and that "[t]he removal statute [should be] strictly construed against removal jurisdiction," *Provincial Gov't of Marinduque*, 582 F.3d at 1087. Accordingly, the Court remands this matter to the Superior Court.

---

[5] The Court observes that a number of district courts have suggested that the import of Footnote 12 is that it prohibits Plaintiffs from refuting a finding that a defendant has been fraudulently joined by asserting that there are *new*, *unalleged* claims that may be asserted against the defendant. *See e.g. Calero*, 271 F. Supp. 2d at 1177 (holding that *Kruso* barred Court from considering unalleged "sixth cause of action"). Where, as here, a plaintiff may be able to successfully amend a previously alleged cause of action, district courts have considered *Kruso* and nevertheless remanded on the basis that the plaintiff may be able to cure deficiencies in previously alleged claims. *see Widder v. State Farm Fire & Cas. Co.*, CIV 2:10-2221 WBS, 2010 WL 4386698, at *2-3 (E.D. Cal. Oct. 28, 2010) (holding that *Kruso* barred "the court [from considering]… post-removal filings to the extent they introduce new causes of action or legal theories," but remanding because "plaintiff [might] be able to explain or expand on his [preexisting] allegations" to state a claim against the defendant); *cf Burris*, 2006 WL 2038040 at *2 (acknowledging *Kruso* and remanding where defendant failed to show plaintiff's cause of action could not be amended); *Padilla*, 697 F. Supp. 2d at 1159 (same).

### C. Attorney's Fees and Costs

Plaintiffs request that the Court award Plaintiffs their attorney's fees and costs associated with pursuing the Motion to Remand. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court is not persuaded that Defendants lacked an objectively reasonable basis for believing that Feeny was fraudulently joined. While Plaintiffs' claim against Feeny for defaming Shirley may be amended, as currently alleged, Plaintiffs' claim likely does not state a valid cause of action. Moreover, while the Court has not discussed Plaintiff's claim against Feeny for defaming Greg, it suffices to say that there was a reasonable basis for Defendants to assert that this claim was not valid. Accordingly, the Court denies Plaintiffs' request for attorney's fees and costs.

### V. CONCLUSION

For the reasons set forth above, the Court REMANDS this action to the Superior Court for the County of Santa Clara. Accordingly, the Motion to Dismiss filed by Defendants is DENIED AS MOOT. *See* ECF No. 17.

**IT IS SO ORDERED.**

Dated: May 13, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

11

Case No.: 13-CV-0475-LHK
ORDER REMANDING CASE